# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| NICHOLAS JOHNSON,<br><br>                Plaintiff,<br><br>vs.<br><br>KIRK and DEBRA BEECHER, and CHELSEA LACASSE,<br><br>                Defendants. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:18CV703DAK<br><br>Judge Dale A. Kimball |

This matter is before the court on Defendants Kirk and Debra Beecher's Motion to Dismiss Complaint to Invalidate Guardianship Pursuant to 25 U.S.C. § 1914 [ECF Docket No. 12]. On February 6, 2019, the court held a hearing on the motion. At the hearing, Plaintiff Nicholas Johnson was represented by Paul Tsosie, and Defendants Kirk and Debra Beecher were represented by Nicole Salazar-Hall and Cedar Q. Cosner. After hearing argument, the court took the matter under advisement. The court has carefully considered the memoranda and other materials submitted by the parties, as well as the law and facts relating to the motion. Now being fully advised, the court issues the following Memorandum Decision and Order.

## BACKGROUND

Nicholas Johnson is the biological father of three minor children, O.J., Z.J., and M.J. Chelsea Dawn LaCasse is the biological mother of the three children. Johnson and LaCasse had an on-and-off relationship from 2005 to 2014, living together at multiple residences in Nampa and Meridian, Idaho until their final separation in August 2014. At that time, Johnson moved in

with his parents in Meridian, Idaho, while LaCasse stayed at their home in Nampa, Idaho. In February 2015, LaCasse moved to Payson, Utah, with the three children to live with her mother and step-father, Defendants Debra and Kirk Beecher.

On July 29, 2015, the Utah Division of Child and Family Services ("DCFS") filed a verified petition regarding custody of the three children with the Fourth District Juvenile Court in and for Utah County, State of Utah, due to LaCasse's substance abuse. In September 2015, the Beechers intervened in the Utah state case and entered into a stipulation with DCFS, LaCasse, and the children's Guardian ad Litem. Under the stipulation, the court awarded the Beechers permanent custody and guardianship of the minor children. On September 4, 2015, the Utah State juvenile court closed the case based on the mediated settlement.

In December of 2015, LaCasse asked Johnson if she could stay with him at his parents' home in Meridian, Idaho for a couple of weeks. At that time, he learned that Debra Beecher had custody of the children and that there was a Utah State juvenile court case. Johnson had not been aware of any of the court proceedings until that time. Six months later, on June 15, 2016, the Utah State juvenile court granted Johnson's Motion to Reopen the Case, specifically finding that Johnson was not properly served with a copy of the State's Verified Petition for Custody.

On September 16, 2016, Johnson served the Beechers with a Verified Petition to Change Custody and Guardianship asking for custody of the three children. The Beechers filed their Answer to the Petition on October, 11, 2106. Although Johnson had not filed the Petition with the state juvenile court, the state court judge allowed the Petition to be filed in the action on the first day of trial, December 12, 2106. The state court judge considered the Petition in the trial. However, nowhere in Johnson's Petition does he refer to the ICWA or the fact that the three

2

children may be of Indian heritage.

From 2010 to 2017, the Johnson family discussed enrolling all eligible members in the Choctaw Nation of Oklahoma. Kimble Johnson, Nicholas' father and the paternal grandfather of Nicholas' three children, enrolled as a member of the Choctaw Nation of Oklahoma in 2010. The rest of the family had the necessary paperwork to apply as members. But Nicholas had not applied for enrollment or become enrolled as a tribal member when he became involved in the state juvenile custody case or at the time of the trial in that case.

Later in the proceedings, when Nicholas Johnson learned that there were procedural and substantive protections that could apply to his children, he started the process to become an enrolled member in the Choctaw Nation of Oklahoma. On November 7, 2017, Nicholas Johnson obtained a Certificate of Degree of Indian Blood, and the next day obtained a Choctaw Nation Membership Card. Nicholas Johnson and his three minor children became enrolled members of the Choctaw Nation of Oklahoma on November 13, 2017.

On November 16, 2017, during a review hearing in the state custody case, Utah State Fourth District Juvenile Court Judge F. Richards Smith held that Nicholas Johnson was a member of a federally recognized Indian Tribe and that the minor children were Indian Children pursuant to the Indian Child Welfare Act ("ICWA"). The Beechers provided notice of the custody proceedings to the Choctaw Nation, pursuant to the ICWA. The Choctaw Nation submitted a letter to the court, dated December 20, 2017, stating that conflicting information prevented the Choctaw Nation from taking a position on the custody issue.

On January 16, 2018, Judge Smith issued a final Permanency Order denying Nicholas Johnson's Petition to Change Custody and Guardianship. In the Permanency Order, Judge Smith

explicitly found that "[t]he ICWA did not apply to this case until November 13, 2017, [when Johnson became an enrolled member], and is not applied retroactively." Judge Smith also found that even though the active provisions of the ICWA were not required, active efforts had been provided to Johnson and Johnson failed to engage in those services to restore custody. Judge Smith further found that the placement of the children with the Beechers complied with the ICWA as being a qualified Indian placement. Judge Smith then denied Johnson's petition to change custody and ordered that the children remain in the permanent custody of the Beechers.

Johnson did not appeal the state court's decision to the Utah Court of Appeals. Rather, on September 6, 2018, Johnson filed the instant Complaint in this court to invalidate guardianship pursuant to the ICWA, 25 U.S.C. § 1914.

## DISCUSSION

### Beechers' Motion to Dismiss

The Beechers move the court to dismiss Johnson's Complaint to Invalidate Guardianship Pursuant to 25 U.S.C. § 1914, arguing that (1) this court should abstain from ruling on the ICWA claim based on the *Rooker-Feldman* abstention doctrine, (2) the ICWA claims are barred by res judicata, and, in any event, (3) the state juvenile court properly applied the ICWA. Johnson learned that Utah courts were reviewing the custody of his children in December of 2015 but he did not enroll as a member of the Choctaw Nation until November of 2017, well after he had asked the state court to reopen the case, filed a petition to change custody, and had a trial in the juvenile court. When he enrolled in the Choctaw Nation in November of 2017, the court acknowledged his enrollment and addressed the ICWA issues. Now, Johnson challenges the juvenile court's determination that the ICWA's protections do not apply retroactively. The

Beechers argue that this challenge is an improper attempt to appeal the state court decision and his Complaint should be dismissed for failure to state a claim because it rests on issues that were already fully litigated and resolved by the Utah juvenile court.

**1.** *Rooker-Feldman*

Johnson's Complaint asks this court to invalidate the Utah state juvenile court's guardianship decision. It is well established that a "United States District Court has no authority to review final judgments of a state court in judicial proceedings." *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983). Federal courts recognize that "it was the province and duty of the state courts to decide" federal constitutional questions, "and their decision, whether right or wrong, was an exercise of jurisdiction." *Rooker v. Fidelity Trust Co.*, 263, U.S. 413, 415 (1923). "[C]ases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments" is prohibited. *Exxon-Mobil Corp. v. Saudi Basic Indus., Corp.*, 544 U.S. 280, 284 (2005). A "party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a Untied States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. DeGrandy*, 512 U.S. 997, 1005-06 (1994).

In this case, Johnson concedes that his Complaint, on its face, falls within the boundaries of the *Rooker-Feldman* doctrine. However, Johnson contends that § 1914 of the ICWA is an exception to the *Rooker-Feldman* doctrine. Section 1914 of the ICWA states:

> Any Indian child who is the subject of any action for foster care placement or termination of parental rights under State law, any parent or Indian custodian from whose custody such child was

5

> removed, and the Indian child's tribe may petition any court of
> competent jurisdiction to invalidate such action upon a showing
> that such action violated any provision of sections 1911, 1912, and
> 1913 of this title.

25 U.S.C. § 1914. Johnson relies on *Doe v. Mann*, in which the Ninth Circuit concluded that Section 1914 of the ICWA "provides the federal courts authority to invalidate a state court foster care placement or termination of parental rights if it is in violation of Sections 1911, 1912, or 1913." *Doe v. Mann*, 415 F.3d 1038, 1047 (9th Cir. 2005).

The Beechers do not argue that this Court lacks subject matter jurisdiction to hear ICWA cases under the federal question doctrine. Rather, the Beechers assert that the *Rooker-Feldman* doctrine does not permit Johnson to seek review of the state court's ICWA decision in this court. The key distinction with this case and *Doe* is that, in *Doe*, the state proceedings dealt only with state law. The judge did not make any findings concerning the child's status as an Indian child under ICWA. In the present case, Judge Smith analyzed whether the ICWA applied and whether it had been complied with. Therefore, unlike *Doe*, Johnson does not just ask the court to review whether a state court's application of state law complies with the ICWA, but actually asks this court to review the state court's application of the ICWA.

In *Yancey v. Thomas*, 441 Fed. Appx. 552, 556 (10th Cir. 2011), the Tenth Circuit appears to have rejected the application of *Doe* in the Tenth Circuit, explaining that the Ninth Circuit distinguished three Tenth Circuit cases and "declined to determine the relationship between § 1914 and either the full-faith-and-credit provisions of 28 U.S.C. § 1738 or the doctrines of res judicata and collateral estoppel." *Id.* at 556-57 (stating "[w]e are not persuaded," in relation to *Doe* analysis). Therefore, the applicability of *Doe*'s legal analysis in this case is questionable

because of the factual distinctions discussed above and its lack of addressing preclusion principles. 415 F.3d at 1042 n.5. This court clearly has jurisdiction to hear an ICWA claim in the first instance, which is the factual circumstances in which the *Doe* court addressed the issue. Unlike *Doe*, this case presents serious preclusion issues that are fully briefed. Therefore, the case is more similar, legally and factually, to *Yancey*.

Based on the cases already decided by the Tenth Circuit, and distinguished in *Doe*, this court believes that the Tenth Circuit would apply the *Rooker-Feldman* doctrine in the ICWA context. *Morrow v. Winslow*, 94 F.3d 1386, 1393-96 (10th Cir. 1996); *Kiowa Tribe of Oklahoma v. Lewis*, 777 F.2d 587, 590-92 (10th Cir. 1985); *Comanche Indian Tribe of Oklahoma v. Hovis*, 53 F.3d 298, 302-04 (10th Cir. 1995). These decision plainly demonstrate that the ICWA is not immune from federal court abstention principles or res judicata. In *Morrow*, the Tenth Circuit applied the *Younger* abstention doctrine in an ICWA case challenging a state court adoption. *Morrow*, 94 F.3d at 1388, 1398. Like the *Younger* doctrine, *Rooker-Feldman* is a procedural tool through which the federal courts decline to interfere in state court proceedings.

Although Johnson claims that he did not have a requirement to appeal the case to the Utah Court of Appeals, he was required to do so if he wanted to challenge the trial court's ICWA decision. *Yancey*, *Comanche*, and *Kiowa* are all "clear that § 1914 is not an independent ground to relitigate state court decisions." *Comanche*, 53 F.3d at 304-05 (discussing *Kiowa*). If the federal issue is raised in the state court, it is not "'appealable' in federal district court." *Id.* Rather State courts are competent to hear and routinely hear ICWA issues and review of those ICWA decisions are "limited to timely appeal to the state appellate courts." *Id.*

But, this court recognizes that in *Yancey* the Tenth Circuit specifically found it "need not

7

address *Rooker-Feldman*" because the doctrine of res judicata applies. 441 Fed. Appx. at 555 n.1. As explained in *Yancey*:

> Although the doctrine poses a jurisdictional bar to our consideration of a claim, the bar is based on a statute, not Article III of the Constitution, so we can avoid the issue if we dismiss a claim on any other ground. . . . *Restoration Pres. Masonry Inc. v. Grove Europe Ltd.*, 325 F.3d 54, 59-60 (1st Cir. 2003) (*Steel Co.* [*v. Citizens for a Better Environment*, 523 U.S. 83 (1998)] requires courts to resolve Article III jurisdictional disputes before addressing merits, but courts may dismiss on the merits and thereby bypass problematic jurisdictional issues that do not implicate Article III case-or-controversy requirements) . . . . Therefore, we may avoid the *Rooker-Feldman* issue because, as explained below, we can dismiss Yancey's claim on the merits. *See Torromeo v. Town of Fremont*, 438 F.3d 113, 115 (1st Cir. 2006) (bypassing *Rooker-Feldman* issue to consider district court's alternative ruling that action was barred by res judicata).

*Id.* Accordingly, although this court believes that *Rooker-Feldman* precludes Johnson's ICWA Complaint in this court, the court will similarly address the issue on the merits.

## 2. Res Judicata

The Beecher's also move to dismiss Johnson's ICWA claim because the issues supporting his claim have already been considered and rejected by the state juvenile court. Federal courts respect the resolution of issues decided in state courts. *San Remo Hotel, L.P. v. City and County of San Francisco*, 545 U.S. 323, 342 (2205) ("We have repeatedly held . . . that issues actually decided in valid state-court judgments may well deprive plaintiffs of the 'right' to have their federal claims relitigated in federal court."). A federal court must "give preclusive effect to any state-court judgment that would have preclusive effect under the laws of the State in which the judgment was rendered." *Petersen v. Riverton City*, 784 F. Supp. 2d 1234, 1238 (D. Utah 2011).

Utah law precludes relitigation of issues in a second suit when the following elements are met: "(I) the party against whom issue the preclusion is asserted must have been a party to or in privity with a party to the prior adjudication; (ii) the issue decided in the prior adjudication must be identical to the one presented in the instant action, (iii) the issue in the first action must have been completely, fully, and fairly litigated; and (iv) the first suit must have resulted in a final judgment on the merits." *Id.*

The Tenth Circuit has barred ICWA actions in federal district court where a party "has lost in state court following full consideration, briefing, and argument on the identical issue of fact and law" raised in the state trial court. *Yancey v. Thomas*, 441 Fed. Appx. 552, 558 (10th Cir. 2011). In this case, Johnson admits he was a party to the state court juvenile court proceedings and that those state court proceedings resulted in a final judgment on the merits. However, Johnson asserts that the issue Judge Smith decided was not identical to the one presented in this case and that the issue in the first action was not completely, fully, and fairly litigated.

In this case, Johnson's Complaint under the ICWA focuses on the State of Utah's purported failure to serve him with a copy of the State's Verified Petition for Custody in 2015. Johnson argues that if he had been properly served, he would have had the opportunity to answer the question in the State's Verified Petition for Custody asking whether Indian children were involved. Johnson claims that if he had been given the opportunity to answer the question of whether he was an Indian parent or his children were Indian children, he would have enrolled himself and his children within a matter of days and he and the children would have been entitled to the heightened protections of the ICWA.

Johnson claims that this exact question was not litigated in the state court. However, the

9

state juvenile judge dealt with the issue regarding lack of notice and the state judge specifically ruled that the ICWA did not apply in 2015 because Johnson was not an enrolled member of an Indian tribe at that time. Johnson simply disagrees with the state judge's decision and now manufactures a new factual universe in response to the ruling by claiming that he would have immediately enrolled his children if he had been served with the state's original petition for custody. Johnson cannot make a case based on what he would have done. The facts are that he was not an enrolled member in 2015 and the ICWA does not apply until Indian children are involved. Moreover, the state court proceedings belie Johnson's assertion Johnson that he would have immediately enrolled himself and his children. Johnson was a party to the reopened custody proceedings for eighteen months–had filed his own petition to change custody and gone through a trial in juvenile court–before he enrolled himself and his children in the Choctaw Nation of Oklahoma.

An issue is deemed fully and fairly litigated so long as the claimant has a "full and fair opportunity to litigate it." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 325 (1971). Johnson had a full and fair opportunity to litigate his contention regarding the lack of notice in the state juvenile court proceedings. Johnson admits that in 2016 Judge Smith allowed him to reopen the custody case based on the lack of notice, that he filed a petition to change custody that the state court fully considered, and that Judge Smith considered the ICWA issues once Johnson informed the court that he and the children had become enrolled members of the Choctaw Nation of Oklahoma in 2017.

Even though Johnson did not enroll himself and his children in the Choctaw Nation and raise the ICWA issue until the state proceedings were nearly completed, the ICWA issue in the

first action was fully and fairly litigated. The Choctaw Nation of Oklahoma was notified of the proceedings and it provided a statement to the court on the custody issue. Judge Smith then gave the ICWA issues due consideration, analyzed it, and made findings and conclusions to support his Permanency Order. The state court found the ICWA did not apply retroactively, the Beechers were a qualified Indian placement under the ICWA, and active efforts were made to give Johnson an opportunity to gain custody of the children but he did not take advantage of them.

Johnson admits that his arguments rely entirely upon a failure to be served a copy of the State's verified petition for custody in 2015. However, Johnson asserts that the conclusion that Judge Smith reached, that the ICWA did not apply until November 13, 2017, was in error. Judge Smith ruled that the earliest date that the ICWA applied was November 13, 2017, when Johnson became an enrolled member of the Choctaw Nation. The issue of whether the ICWA applied in 2015 is identical in both actions. Johnson cannot ask this court to review the ruling simply because he believes it is erroneous. His proper remedy for an erroneous ruling was to timely file an appeal to the Utah Court of Appeals. Johnson had the opportunity to appeal Judge Smith's decision to the Utah Court of Appeals if he felt the ruling on the ICWA issues was erroneous and he chose not to do so. Thus, the issues relating to the improper notice in 2015 were fully and fairly litigated in state court.

The state court's Permanency Order constitutes a final judgment on the merits. Judge Smith determined that the ICWA did not apply during the relevant period and Johnson was not entitled to custody solely on those grounds. Johnson had the opportunity to appeal that decision to the Utah Court of Appeals but he chose not to do so. The *Yancey* court was clear that 25 U.S.C. Section 1914 is not an independent ground to relitigate state court decisions. 441 Fed.

11

App. at 558. "Once [a party chooses] to litigate in State Court, review of the State Court's decision was limited to timely appeal to the state appellate courts and was not 'appealable' in federal district court." *Id.* at 558-59.

Johnson claims that unlike the plaintiff in *Yancey* he did not fully litigate his case through the Utah appellate courts. But this is an improper reading of *Yancey*. In *Yancey*, the plaintiff fully litigated certain rulings through the state appellate courts, but the issue the court was addressing had not been appealed to state appellate court. 441 Fed. Appx. at 557. The *Yancey* court explained, "Yancey fails to point to a pending appeal of any of the state-court decisions he seeks to challenge in this action. He fully exhausted his state-court appellate remedies with respect to several of the Oklahoma trial court's orders, and he elected not to appeal that court's order terminating his parental rights. The latter order became final for purposes of res judicata when he failed to perfect an appeal." *Id.* (citing *Hubbard v. Kaiser-Francis Oil Co.*, 256 P.3d 69, 74 (Okla. 2011) ("The doctrine of res judicata teaches that when the appeal time expires a decision under this rubric becomes impervious to reconsideration and hence binding and conclusive upon the parties.")).

Accordingly, the court concludes that Johnson's Complaint under the ICWA is barred by res judicata.

### 3. Application of ICWA

Even if the court were to determine that Johnson's Complaint warrants review of the state court's Permanency Order, the state court properly applied the ICWA. The ICWA requires the party seeking the termination of parental rights to an Indian child to "notify the parent or Indian custodian and the Indian child's Nation. 25 U.S.C. § 1912(a). An "Indian child" is defined as "any

12

unmarried person who is under age eighteen and is either (a member of an Indian Nation or (b) is eligible for membership in an Indian Nation and is the biological child of a member of an Indian Nation." 25 U.S.C. § 1903.

In this case, Nicholas Johnson did not become a member of an Indian Nation and did not enroll his children as members in an Indian Nation until November 2017. Therefore, the protections of the ICWA did not apply when he was not given notice in 2015 or when the state custody case was re-opened in 2016.

The state juvenile court judge properly determined that the ICWA does not apply retroactively. The Utah Court of Appeals has ruled that the ICWA does not apply retroactively to a time when a parent thinks the child may be eligible for enrollment in an Indian Nation. *In re P.F.*, 405 P.3d 755, 759, 2017 UT App 159, ¶18. "The fact that Mother was simultaneously seeking membership with the Cherokee Nation did not bring Child within the statutory definition of an Indian child." *Id.* at 764, ¶36. The court held that when it was undisputed that the child was not an Indian child at the time the custody order was issued, the ICWA did not apply. *Id.*

In this case, the state judge merely applied *In re P.F.* and ruled that the ICWA applied to the proceedings as of November 13, 2017. Accordingly, the provisions of the ICWA were not required as of September 4, 2015, or when the case was re-opened in 2016.

Even though the active requirements of the ICWA were not required, the state juvenile court determined that active efforts had been provided to Johnson and Johnson failed to engage in those services to restore custody. Accordingly, Johnson cannot now seek relief in this court after failing to avail himself of the services and opportunities provided by the juvenile court and failing to avail himself of Utah appellate court remedies. Therefore, even if the court were to

13

review the state court's decision, this court finds that there is no basis for reversing it. Accordingly, the court grants the Beechers' motion to dismiss.

### 4. Chelsea LaCasse

At the hearing on the motion, Johnson stated that the Beechers had failed to serve LaCasse with their Motion to Dismiss and LaCasse wanted an opportunity to comment on the motion. However, there is no indication in the court's docket that LaCasse is a party to the case. Johnson has not filed a proof of service that LaCasse was ever served with the Complaint, and the time for serving LaCasse with the Complaint has passed. LaCasse has never made an appearance in the case in any way. The only procedural impropriety in the case is Johnson's failure to file a proof of service with respect to LaCasse. Defendants' were not required to serve their motion on a party that has not entered the case.

In addition, Johnson's Complaint alleges that all Defendants violated the ICWA's notice requirements when Johnson failed to get notice of the state's custody petition in 2015 and when the case was reopened in 2016. But this court has ruled that Johnson's notice claim is barred by res judicata and, even if not barred, the state juvenile court properly decided the issue. Moreover, LaCasse does not have custody of the three minor children and could not have provided Johnson with any of the relief he sought in his Complaint. Accordingly, the court dismisses the case whether or not the LaCasse was ever served with the Complaint.

## CONCLUSION

For the reasons set forth above, Defendants Kirk and Debra Beecher's Motion to Dismiss Complaint to Invalidate Guardianship Pursuant to 25 U.S.C. § 1914 [ECF Docket No. 12] is GRANTED. This case is closed.

DATED this 14th day of February, 2019.

        BY THE COURT:

        _____
        DALE A. KIMBALL,
        United States District Judge